Andrew M. Calamari
Regional Director
Lara S. Mehraban
Jack Kaufman
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-0106 (Kaufman)
Email:  Kaufmanja@sec.gov (Kaufman)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------------------------x

| | | |
|---|---|---|
| **SECURIITES AND EXCHANGE COMMISSION,** | : | |
| | : | **16 Civ.** |
| **Plaintiff,** | : | |
| | : | |
| - against - | : | **COMPLAINT** |
| | : | |
| **JOSEPH TAUB and ELAZAR SHMALO,** | : | **ECF CASE** |
| | : | |
| **Defendants.** | : | |
| | : | |

------------------------------------------------------------------------x

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendants Joseph Taub ("Taub") (who, upon information and belief, resides at 65 Edgewood

Avenue, Clifton, NJ 07012) and Elazar Shmalo ("Shmalo") (who, upon information and belief,

resides at 93 The Circle, Passaic, NJ 07055) (collectively, "Defendants"), alleges:

## SUMMARY

1.       From at least January 2014 through the present, Defendants engaged in a lucrative

fraudulent market manipulation scheme, utilizing dozens of securities accounts at several

brokerage firms to artificially influence the market prices of more than 2,000 exchange-traded

securities.  The design and intent of Defendants' scheme was to create the false appearance of

trading interest and activity in particular stocks, thereby enabling them to purchase stocks at artificially low prices and then quickly sell them at artificially high prices for substantial profits.

2.  Defendants successfully attained their illicit goals.  In the two-year period between January 2014 and December 2015, Defendants engaged in a total of at least 23,000 such market manipulation events (hereinafter referred to as "Coordinated Trading Events") and reaped over $26 million in illicit profits.  Each Coordinated Trading Event typically occurred in less than 5 minutes, and Defendants averaged more than 40 such events per trading day.

3.  Defendants used at least two accounts to accomplish each Coordinated Trading Event.  At least one account was primarily used to place multiple small orders in a stock to create upward or downward pressure on the stock price (hereinafter referred to as a "helper" account). At least one other account (hereinafter referred to as a "winner" account) was primarily used to purchase and sell larger quantities of stocks at prices that had been affected by the manipulative orders in the helper account.  To further conceal their scheme, the helper and winner accounts that Defendants used in each Coordinated Trading Event were almost always held at different clearing firms to mask the illicit coordination between the two types of accounts.

4.  In addition to the manipulative trading itself, Defendants engaged in other deceptive conduct designed to evade detection, including misrepresenting to brokerage firms the identities of traders in accounts and the nature of their trading (which involved simultaneous trading in accounts at other firms).

5.  By virtue of the foregoing conduct and as alleged further herein, Defendants violated, and aided and abetted violations of, Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77q(a)(1), (3), and Sections 9(a)(2) and 10(b) of the

Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5(a) and 10b-5(c) thereunder, 15 U.S.C §§ 78i(a)(2), 78j(b), 17 C.F.R. §§ 240.10b-5(a), (c).

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

6.      The Commission brings this action pursuant to the authority conferred upon it by Sections 15(b), 20(b) and 20(d) of the Securities Act. 15 U.S.C. §§ 77o(b), 77t(b), 77t(d), and Sections 20(a), 20(b), 20(e), 21(d)(1), 21(d)(3), and 21 (d)(5) of the Exchange Act, 15 U.S.C. §§ 78t(a), 78t(b), 78t(e), 78u(d)(1), 78u(d)(3), 78u(d)(5).  The Commission seeks a final judgment: (a) permanently restraining and enjoining Defendants from engaging in the acts, practices and courses of business alleged herein; (b) requiring Defendants to disgorge all ill-gotten gains with prejudgment interest thereon; and (c) ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to Sections 20(b) and 22 of the Securities Act, 15 U.S.C. §§ 77t(b) and 77v, and Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.  Defendants, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, or of a facility of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged herein.

8.      Venue lies in this District pursuant to Section 22(a) of the Securities Act, 15 U.S. C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the acts, practices, courses of business and transactions constituting the violations alleged herein occurred within the District of New Jersey.  Certain of the trade orders were placed in New Jersey, and

telephone calls were made from New Jersey and to others in New Jersey.  Orders used to perpetrate the scheme were placed and executed on exchanges that had data centers located in the District of New Jersey.  Much of the conduct alleged herein occurred while Defendants resided in New Jersey.

## DEFENDANTS

9.     **Taub**, age 37, is a resident of Clifton, NJ.  From approximately November 2002 until May 2011, Taub was a registered representative at various brokerage firms (where he held Series 7 and 55 licenses).

10.     **Shmalo**, age 21, is a resident of Passaic, NJ.  On brokerage account opening documents, Shmalo describes himself as either "self-employed" or "unemployed."

## RELATED ENTITIES

11.     **EAC Capital LLC ("EAC")** is a New York limited liability company with addresses in Cedarhurst, NY and Clifton, NJ.  At all relevant times, Taub was a beneficial owner of EAC, and he controlled trading in the brokerage accounts in EAC's name that were used in the scheme alleged herein.

12.     **LNW Direct LLC ("LNW")** is a New York limited liability company with addresses in Cedarhurst, NY and Clifton, NJ (the same addresses as EAC).  At all relevant times, Taub had a beneficial ownership interest in LNW, and he controlled trading in the brokerage accounts in LNW's name that were used in the scheme alleged herein.

## FACTS

### A.     Defendants Engaged in Voluminous Manipulative Trading.

13.     From at least January 2014 to the present, Defendants orchestrated voluminous intentionally manipulative trading in stocks traded on U.S. securities exchanges, including the NASDAQ Stock Market ("NASDAQ"), the New York Stock Exchange ("NYSE") and the

4

NYSE MKT.  In the two-year period between 2014 and 2015, Defendants engaged in coordinated stock trading in at least 36 accounts that they controlled at 9 separate brokerage firms (the "Coordinated Accounts").

14.     Defendant Taub was the principal orchestrator of the manipulative scheme.  Taub traded in the Coordinated Accounts in his name, as well as in the name of his associates, regardless of whether he was designated as an authorized trader in those accounts.  Taub instructed Defendant Shmalo as to how to execute the manipulative tactics and supervised Shmalo's trading.  Taub also provided most or all of the funds for the securities accounts that Defendants used in the manipulative trading scheme, and Taub received the majority of profits derived from the scheme.

15.     Defendant Shmalo traded securities in Coordinated Accounts held in both his and his relative's name.  Defendant Taub provided most or all of the funds for such accounts.  Taub initially provided approximately $330,000 to fund such accounts, to be used by Shmalo to trade under Taub's supervision, with the expectation that Shmalo would return the funds to and share the net profits with Taub.  Shmalo regularly reported his trading to Taub, including providing him position reports and profit-and-loss calculations.  Shmalo generally received 30 to 35 percent of the net profits in the Coordinated Accounts in which he traded, with Defendant Taub receiving the remainder.

16.     Defendants repeatedly used the Coordinated Accounts to carry out the scheme by engaging in the following general trading pattern in Coordinated Trading Events:

  a.  Defendants used two or more Coordinated Accounts to trade on the same day during the same period of time in the same exchange-traded stock, typically a relatively thinly-traded stock;

  b.  The trading event began when the first Coordinated Account traded and ended when Defendants closed out their positions in the particular stock that they were

trading (or when the trading day ended, whichever occurred sooner);

   c.  In one (or more) helper account(s), Defendants primarily placed multiple smaller buy (or sell) orders to create the upward (or downward) pressure on the stock price; and

   d.  In at least one other winner account, Defendants primarily placed larger buy (or sell) orders executed at artificial prices affected by the "helper" account activities.

17.    As a general matter, Defendants' manipulative trading—*i.e.*, Defendants' trading designed to affect artificially the price of a stock traded in a particular Coordinated Trading Event—occurred in the "helper" accounts; and Defendants used the "winner" accounts to generate the profits of their manipulative scheme.

18.    From in or about early 2014 through in or about late 2015, Defendants engaged in Coordinated Trading Events at least 23,000 times and were successful in generating net profits, averaging approximately $1,400, in more than 80 percent of those Coordinated Trading Events. Defendants reaped a total of over $26 million in profits from their successful Coordinated Trading Events.  For the less than 20 percent of the time that a Coordinated Trading Event resulted in a net loss, the average net loss per event was approximately $600.

19.    In some Coordinated Trading Events, Defendants started the event by purchasing one large lot of shares in the winner account.  In other Coordinated Trading Events, Defendants created an artificially lower market price for a stock by placing multiple small sell orders (typically 100 to 400 shares each) in one or more helper accounts.  The purpose and effect of entering multiple small sell orders in the helper account was to create for the market the false appearance of significant sell-interest in the security, and to induce other market participants to execute against buy orders that the Defendants entered in a winner account at artificially low prices (typically through a rapid succession of buy orders of between 1,000 to 4,000 shares

each).  Once the winner account buy orders were executed, the Defendants then cancelled any

open helper account sell orders in order to facilitate the next step in the scheme.

20.     After establishing the position in the winner account, the same manipulation was

typically repeated on the opposite side of the market to realize the profit from the scheme.  To

sell the winner account stock at an artificially high price (and, thus, profit from the scheme),

Defendants typically first placed a series of smaller buy orders (of 100 to 400 shares each) in one

or more helper accounts, at progressively higher prices.  The purpose and effect of those buy

orders was to create the false appearance for the market of significant buy-interest in the security,

and to induce other market participants to execute against sell orders that the Defendants entered

in the winner account at artificially high prices (typically through a rapid succession of sell

orders of between 1,000 to 4,000 shares each).  Once the winner account liquidated its long

position (typically generating a net profit for the winner account), Defendants typically cancelled

any remaining open helper account buy orders and liquidated any remaining smaller position in

the helper accounts (thus frequently accruing losses that were smaller than the winner account's

gains).

21.     Defendants typically used only two accounts for the majority of the Coordinated

Trading Events, although they used three or more accounts for more than 6,900 (or 30%) of the

Coordinated Trading Events.

22.     Through their thousands of Coordinated Trading Events, Defendants intended to

induce other market participants to sell shares to and purchase shares from their winner accounts

at artificially-created prices driven by their helper account orders.

23.     Defendants each understood the mechanics of the Coordinated Trading Events.  In

particular, Defendants understood that the events involved coordinating trading among the helper

and winner accounts, in which the helper accounts almost always accrued small losses solely for the purpose of artificially lowering the price at which the winner accounts were able to purchase stock and raising the price at which the winner accounts' were able to sell stock.  Each Defendant understood that such losses were a necessary component of their manipulation scheme, a fact reflected in the manner in which Defendants discussed and calculated their profits and losses, and distributed them amongst themselves and other associates.

24.     Defendants' scheme has continued in 2016, is ongoing, and has expanded to include new brokerage accounts in their names as well as the names of other individuals and entities.

25.     Attached hereto as Exhibits 1-3 are three detailed examples of individual Coordinated Trading Events, which the Commission  incorporates by reference herein as Commission allegations in this paragraph of the Complaint.  Each of those Coordinated Trading Events took place in less than 5 minutes.  The net profits that Defendants reaped from the three attached examples range from $3,024 in under 3 minutes (Exhibit 1) to $21,162 in under 4 minutes (Exhibit 3).  Defendants' share of the trading volume in the particular stocks traded during the time periods of these three Coordinated Trading Events ranges from approximately 57% (Exhibit 2) to approximately 87% (Exhibit 3).

26.     Exhibits 1-3 are examples of Coordinated Trading Events that Defendants engaged in at least 23,000 times in the two-year period between 2014 and 2015.

**B.     Defendants' Elaborate Efforts to Conceal Their Fraudulent Scheme.**

27.     To perpetuate their scheme, the Defendants undertook elaborate measures to evade detection.  For each Coordinated Trading Event, the Defendants used at least two

accounts—a helper account and a winner account—which were almost always held at two different clearing firms, to mask the illicit coordination between the two (or more) accounts.

28.     To further conceal their activity, Defendants opened and used a total of at least 36 Coordinated Accounts in the scheme.  The 36 Coordinated Accounts were held in Defendants' own names, the names of their family members (including minor children, spouses and parents), the names of entities that Defendants controlled, EAC and LNW, and the name of an associate ("Associate 1").

29.     Twenty-two of the accounts were held in Taub's name or the names of his family members.  Taub also controlled trading in one account held in the name of Associate 1 (for which Taub was not an authorized trader), three accounts held in EAC's name (for which Taub was an authorized trader on only two, and Associate 1 was authorized on the third account), and two accounts held in LNW's name (for which Taub was an authorized trader on only one, and Associate 1 was an authorized trader on the other).  Taub and Associate 1 agreed that Taub would share at least 8 percent of the net profits from trading in the accounts for which Associate 1 was an authorized trader.

30.     Eight of the accounts were held in Shmalo's name and/or the name of one of his family members.

31.     Furthermore, on the numerous occasions when brokerage firms decided to close certain of the Coordinated Accounts, often driven by compliance concerns, Defendants opened new Coordinated Accounts at other brokerage firms—or in a family member's name at the same firm—in an attempt to deceive the brokerage firms regarding their control and use of the Coordinated Accounts.  For example, in late September 2014, a brokerage firm closed at least 6 Coordinated Accounts that Taub controlled that from January to September 2014, had amassed

profits of approximately $9.9 million from Coordinated Trading Events.  In January 2015, Shmalo opened an account in his name at the same brokerage firm and by March 2015 (when the firm terminated and closed that account), had amassed approximately $328,000 in profits from Coordinated Trading Events.

32.     Defendant Taub also actively concealed from brokerage firms that he was behind the trading in accounts for which he was not an authorized trader, such as in accounts in the name of Associate 1, EAC, and LNW.  Moreover, for certain of the EAC and LNW accounts, Taub's beneficial ownership interest in such entities was also concealed from the brokerage firms.  In certain instances, Taub did so knowing that the brokerage firm would not permit the account to remain open if Taub was an authorized trader and/or a beneficial owner.

33.     Despite their concealment efforts, Defendants repeatedly received compliance inquiries from their brokerage firms concerning potentially manipulative trades in their accounts (such as possible wash trades, spoofing, and/or layering).  These inquiries often explained practices constituting manipulative trading, such as trading to create or induce a false, misleading, or artificial appearance of activity in a security, or trading to unduly or improperly influence the market price of a security.  To evade their brokerage firms and conceal their coordinated trading, Defendants responded to these inquiries by feigning ignorance and claiming that they would not repeat such activities.

34.     For example, a compliance analyst at a brokerage firm emailed Shmalo on February 24, 2015 and explained:

> Your activity . . . appeared on one of our Exception reports. . . . .
> [C]reating a new inside bid or offer, using different Market Centers at the same price level, higher or lower and then mass cancelling these orders . . . and then walking up the bid to a higher level and then trying to sell at this artificially higher level . . . is not permitted under any circumstances. . . .

> This is your first and only warning! Your account will be closed if any
> more instances of this method of trading is discovered!

35.     Shmalo replied to the inquiry stating "I am very sorry about these occurrences. It was not my intention nor my knowledge that this activity would be interpreted or considered to be layering.  I'll make sure and be more careful that it doesn't happen again."  Two days later, Shmalo wrote again in response to the inquiry, asking ". . .[i]f I take the offer and then want to sell, do I have to wait?"  In response, the brokerage firm representative reiterated ". . .what you must avoid is entering numerous orders on one side making a new inside NBBO [national best bid and offer] on various exchanges to create the false appearance of demand on one side in order to execute at the artificially inflated price on the opposite side of the market. . .You can't trade in a manner that could appear to be manipulative."

36.     A July 9, 2015 brokerage firm inquiry to Associate 1 concerned cancelled orders in an account held in the name of EAC for which Associate 1 was the authorized trader (which Taub controlled and for which Taub was neither an authorized trader nor listed as a beneficial owner on account forms).  The brokerage firm compliance analyst stated, "[t]he regulators have termed this type of order entry as spoofing, you have been previously warned regarding this. . . You must take immediate measures to avoid this situation in the future."  Associate 1 forwarded the email to Taub, and Taub provided the following response to Associate 1, who then provided it, verbatim, to the brokerage firm:  "Did not realize I was creating a scenario of layering/spoofing. I will be extremely careful with my order preferences in the future to avoid a repeat of this scenario."  Associate 1 did not copy Taub on the responsive email (or otherwise reveal his identity), thus concealing from the brokerage firm that Taub was trading in the account.

## FIRST CLAIM FOR RELIEF
## Violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act

37.     Paragraphs 1 through 36 and Exhibits 1-3 are incorporated by reference as if set forth fully herein.

38.     By virtue of the foregoing, Defendants, directly or indirectly, singly or in concert with others, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in the offer or sale of securities, employed devices, schemes, or artifices to defraud and engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

39.     By virtue of the foregoing, Defendants violated and, unless restrained and enjoined, will continue violating, Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1), 77q(a)(3).

## SECOND CLAIM FOR RELIEF
## Aiding and Abetting Violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act

40.     Paragraphs 1 through 36 and Exhibits 1-3 are incorporated by reference as if set forth fully herein.

41.     By virtue of the foregoing, Defendants knowingly or recklessly provided substantial assistance to each other, both of whom are persons who directly or indirectly, singly or in concert with others, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails in the offer or sale of securities, employed devices, schemes or artifices to defraud and engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

42.     By virtue of the foregoing, Defendants aided and abetted and, unless restrained and enjoined, will continue aiding and abetting, violations of Sections 17(a)(1) and 17(a)(3) of

the Securities Act, 15 U.S.C. §§ 77q(a)(1), 77q(a)(3), in violation of Section 15(b) of the Securities Act, 15 U.S.C. § 77o(b).

43.     By virtue of the foregoing, Defendants aided and abetted and, unless restrained and enjoined, will continue aiding and abetting, violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1), 77q(a)(3), in violation of Section 15(b) of the Securities Act, 15 U.S.C. § 77o(b).

### THIRD CLAIM FOR RELIEF
#### Violations of Section 10(b) of the Exchange Act and
#### Rules 10b-5(a) and 10b-5(c) Thereunder

44.     Paragraphs 1 through 36 and Exhibits 1-3 are incorporated by reference as if set forth fully herein.

45.     By virtue of the foregoing, Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of a security, with scienter, used the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange to employ devices, schemes, or artifices to defraud and to engage in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon others.

46.     By virtue of the foregoing, Defendants violated and, unless restrained and enjoined, will continue violating, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rules 10b-5(a) and 10b-5(c) thereunder, 17 C.F.R. §§ 240.10b-5(a), 240.10b-5(c).

### FOURTH CLAIM FOR RELIEF
#### Aiding and Abetting Violations of Section 10(b) of the Exchange Act and
#### Rules 10b-5(a) and 10b-5(c) Thereunder

47.     Paragraphs 1 through 36 and Exhibits 1-3 are incorporated by reference as if set forth fully herein.

48.     By virtue of the foregoing, Defendants knowingly or recklessly provided substantial assistance to each other, both of whom are persons who directly or indirectly, singly

13

or in concert with others, in connection with the purchase or sale of a security, with scienter, used the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange to employ devices, schemes, or artifices to defraud and to engage in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon others.

49.     By virtue of the foregoing, Defendants aided and abetted and, unless restrained and enjoined, will continue aiding and abetting, violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rules 10b-5(a) and 10b-5(c) thereunder, 17 C.F.R. §§ 240.10b-5(a), 240.10b-5(c), in violation of Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e).

## FIFTH CLAIM FOR RELIEF
### Violations of Section 9(a)(2) of the Exchange Act

50.     Paragraphs 1 through 36 and Exhibits 1-3 are incorporated by reference as if set forth fully herein.

51.     By virtue of the foregoing, Defendants, directly or indirectly, by the use of the mails or means or instrumentalities of interstate commerce, or of a facility of a national securities exchange, effected, alone or with one or more other persons, a series of transactions in securities creating actual or apparent active trading in such securities, or raising or depressing the price of such securities, for the purpose of inducing the purchase or sale of such securities by others.

52.     By virtue of the foregoing, Defendants violated and, unless restrained and enjoined, will continue violating, Section 9(a)(2) of the Exchange Act, 15 U.S.C. § 78i(a)(2).

## SIXTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Section 9(a)(2) of the Exchange Act

53.     Paragraphs 1 through 36 and Exhibits 1-3 are incorporated by reference as if set forth fully herein.

54.     By virtue of the foregoing, Defendants knowingly or recklessly provided substantial assistance to each other, both of whom are persons who directly or indirectly, by the use of the mails or means or instrumentalities of interstate commerce, or of a facility of a national securities exchange, effected, alone or with one or more other persons, a series of transactions in securities creating actual or apparent active trading in such securities, or raising or depressing the price of such securities, for the purpose of inducing the purchase or sale of such securities by others.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

## I.

Permanently restraining and enjoining Defendants, and each of his agents, servants, employees, attorneys and other persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise from violating Section 17(a) of the Securities Act, 15 U.S.C. § 17q(a), and Sections 9(a)(2), 10(b) and 20(b) of the Exchange Act, 15 U.S.C. §§ 78i(a)(2), 78j(b), 78t(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## II.

Ordering Defendants to, jointly and severally, disgorge ill-gotten gains received as a result of the conduct alleged herein, plus prejudgment interest thereon.

### III.

Ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the

Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §

78u(d)(3).

### IV.

Granting such other relief as this Court deems just and appropriate.

Dated:  December 12, 2016

SECURITIES AND EXCHANGE COMMISSION

By: _____
Andrew M. Calamari
Regional Director
New York Regional Office
Brookfield Place, 200 Vesey Street
New York, NY 10281-1022
*Admitted in the U.S. District Court for the*
*Southern District of New York*
(212) 336-0106 (Kaufman)
Email: KaufmanJa@sec.gov

Local Counsel:
Catherine R. Murphy
Assistant U.S. Attorney, Civil Division
United States Attorney's Office
District of New Jersey
970 Broad Street, Ste. 700
Newark, NJ 07102
*Designated Pursuant to Local Rule 101.1(f)*

Of Counsel:
Lara S. Mehraban, Associate Regional Director
Wendy Tepperman
Jack Kaufman
Michael Ellis
Janna Berke

**EXHIBIT 1**

COORDINATED TRADING EVENT IN THE COMMON STOCK OF COMPANY A

JANUARY 8, 2015 FROM 11:46:08 AM TO 11:48:29 AM (Eastern Standard Time)

A.  On January 8, 2015, Defendants orchestrated a Coordinated Trading Event in Company A's stock, which traded on the NASDAQ exchange, from roughly 11:46:18 AM to 11:48:29 AM.

B.  For this particular Coordinated Trading Event, three of the Coordinated Accounts traded Company A stock.  Defendant Taub was an authorized trader on the winner account (number ****9639), held in the names of Taub's wife and her father at Brokerage Firm 1 (hereinafter referred to in Exhibits 1 and 2 as the "winner" account).  Taub controlled trading in one helper account (number ****0035), held in the name of EAC, although Associate 1 was the authorized trader on the account and Taub was not (hereinafter referred to in the Exhibits as the "Associate 1 helper" account).  Shmalo was the authorized trader on a second helper account (number ****3808), held in the name of Shmalo and his relative (hereinafter referred to as the "Shmalo helper" account).  Both helper accounts were held at Brokerage Firm 2.

C.  Between approximately 11:46:18 AM and 11:46:34 AM, the Associate 1 helper account placed a series of six sell limit orders in Company A stock (totaling 2,500 shares), each at a progressively lower price (from $69.69 to $69.42).  Only one of the sell limit orders, for 100 shares, was executed and it was executed at a price of $69.42.  The Associate 1 helper account cancelled five of the sell orders (totaling 2,400 shares) with four of them being cancelled just after the winner account completed its accumulation.  Between the time the first helper account sell order was placed and the winner account placed its first  buy, the national best ask for Company A stock (that is, the lowest price at which market participants were offering to sell Company A stock) declined from $69.73 per share to $69.50 per share.

D.  Between approximately 11:46:42 AM and 11:47:23 AM, the winner account placed 4 purchase orders for a total of 7,200 Company A shares.  Those orders were in increments of between 1,000 and 2,200 shares each and were executed at prices between $69.44 per share and $69.49 per share.

E.  At the same time that the winner account accumulated its 7,200 share position, the Associate 1 helper account entered (between approximately 11:46:36 and 11:47:17) a new series of five sell limit orders (totaling 500 shares).  Four of those orders were executed at prices between $69.44 per share and $69.50 per share; the Associate 1 helper account cancelled the other order.

F.  The helper account sell orders, both before and during the winner account's accumulation, were designed to, and did, artificially lower the stock's market price before (and while) the winner account accumulated its 7,200 share position.

G.  After the winner account accumulated its 7,200 share position, the scheme reversed course to enable the winner account to liquidate at an artificially high price using a rapid series of

helper account buy limit orders to attempt to walk up the market price. Between 11:47:34 AM and 11:47:58 AM, the Associate 1 and Shmalo helper accounts entered a series of 17 buy limit orders (totaling 2,400 shares), each generally at the same or progressively higher prices. Eight of these buy limit orders (totaling 800 shares) were executed, at prices ranging from $69.68 to $69.95 per share. (The helper accounts cancelled the other eight at or before the time the winner account began executing sell orders.) Between the time the first helper account buy order was placed and the winner account placed its first sell order, the national best bid for Company A stock (that is, the highest price at which market participants were offering to buy Company A stock), moved from $69.38 to $69.88.

H. From approximately 11:48:04 AM to 11:48:20 AM, the winner account quickly sold off its 7,200 share position in Company A at a profit. The winner account placed a series of 6 sell market orders (ranging from 200 to 2,000 shares per order), which were executed at prices between $69.80 and $69.94 per share. During approximately the same time period that the winner account was liquidating its position, the Associate 1 and Shmalo helper accounts entered a new series of three buy limit orders (totaling 300 shares), executed between $69.94 and $69.98 per share.

I. The helper account buy limit orders both before and during the winner account's liquidation of the position were designed to, and did, artificially raise the stock's market price before and during the winner account's liquidation of its 7,200 share position.

J. The final step of this Coordinated Trading Event was the two helper accounts' disposal of their smaller positions in Company A stock.

K. The net profit from this Coordinated Trading Event, which lasted less than three minutes, was approximately $3,024 and the trading constituted approximately 76% of the trading volume in Company A stock during that time period.

L. On the same day, Defendants engaged in at least five Coordinated Trading Events in Company A's stock (*i.e.*, the above event and four others), netting profits of roughly $15,450. In addition on January 8, 2015, Defendants engaged in numerous other Coordinated Trading Events involving other companies' stock. Thus, on January 8, 2015, Defendants engaged in a total of at least 52 Coordinated Trading Events, netting profits of roughly $70,545.

**Company A January 8, 2015**
**11:46 AM - 11:48 AM**

| ID | Source | Account | Role | Order Time | Execution Time | Cancel Time | Buy/ Sell | Order Type | Order Quantity | Execution Quantity | Share Balance | Order Price | Execution Price | Best Bid | Best Ask |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 11:46:08 | | 11:46:08 | Sell | limit | 100 | | | $69.69 | | $69.46 | $69.73 |
| 2 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 11:46:11 | | 11:46:12 | Sell | limit | 100 | | | $69.77 | | $69.47 | $69.77 |
| 3 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:46:18 | | 11:47:27 | Sell | limit | 1,000 | | | $69.69 | | $69.46 | $69.73 |
| 4 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:46:22 | | 11:47:27 | Sell | limit | 200 | | | $69.60 | | $69.42 | $69.68 |
| 5 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:46:27 | | 11:47:27 | Sell | limit | 100 | | | $69.57 | | $69.42 | $69.60 |
| 6 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:46:30 | | 11:47:27 | Sell | limit | 100 | | | $69.53 | | $69.42 | $69.57 |
| 7 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:46:33 | | 11:46:34 | Sell | limit | 1,000 | | | $69.50 | | $69.42 | $69.53 |
| 8 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:46:34 | 11:46:34 | | Sell | limit | 100 | 100 | (100) | $69.42 | $69.42 | $69.42 | $69.50 |
| 9 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:46:36 | | 11:46:59 | Sell | limit | 100 | | | $69.49 | | $69.42 | $69.53 |
| 10 | BROKERAGE FIRM 1 | ****9639 | WINNER | 11:46:42 | 11:46:43 | | Buy | market | 2,000 | 2,000 | 2,000 | | | $69.49 | $69.42 | $69.49 |
| 11 | BROKERAGE FIRM 1 | ****9639 | WINNER | 11:46:49 | 11:46:49 | | Buy | market | 2,000 | 2,000 | 4,000 | | | $69.46 | $69.42 | $69.49 |
| 12 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:04 | 11:47:09 | | Sell | limit | 100 | 100 | (200) | $69.46 | $69.46 | $69.37 | $69.53 |
| 13 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:05 | 11:47:20 | | Sell | limit | 100 | 100 | (300) | $69.44 | $69.44 | $69.37 | $69.46 |
| 14 | BROKERAGE FIRM 1 | ****9639 | WINNER | 11:47:09 | 11:47:10 | | Buy | market | 1,000 | 1,000 | 5,000 | | | $69.44 | $69.37 | $69.44 |
| 15 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:16 | 11:47:16 | | Sell | limit | 100 | 100 | (400) | $69.46 | $69.46 | $69.37 | $69.53 |
| 16 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:17 | 11:47:20 | | Sell | limit | 100 | 100 | (500) | $69.50 | $69.50 | $69.37 | $69.53 |
| 17 | BROKERAGE FIRM 1 | ****9639 | WINNER | 11:47:23 | 11:47:23 | | Buy | market | 2,200 | 2,200 | 7,200 | | | $69.48 | $69.37 | $69.53 |
| 18 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:34 | | 11:47:46 | Buy | limit | 500 | | | $69.48 | | $69.38 | $69.65 |
| 19 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:42 | 11:47:42 | | Buy | limit | 100 | 100 | (400) | $69.68 | $69.68 | $69.48 | $69.68 |
| 20 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:46 | | 11:48:15 | Buy | limit | 400 | | | $69.65 | | $69.49 | $69.77 |
| 21 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:47 | 11:47:47 | | Buy | limit | 100 | 100 | (300) | $69.77 | $69.77 | $69.65 | $69.77 |
| 22 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:48 | 11:47:48 | | Buy | limit | 100 | 100 | (200) | $69.80 | $69.80 | $69.65 | $69.80 |
| 23 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:49 | | 11:48:15 | Buy | limit | 100 | | | $69.79 | | $69.73 | $69.81 |
| 24 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:50 | | 11:48:15 | Buy | limit | 100 | | | $69.79 | | $69.79 | $69.84 |
| 25 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:50 | | 11:48:15 | Buy | limit | 100 | | | $69.79 | | $69.79 | $69.84 |
| 26 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:50 | 11:47:50 | | Buy | limit | 100 | 100 | (100) | $69.84 | $69.84 | $69.79 | $69.84 |
| 27 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:51 | 11:47:51 | | Buy | limit | 100 | 100 | 0 | $69.85 | $69.85 | $69.79 | $69.85 |
| 28 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:52 | | 11:48:15 | Buy | limit | 100 | | | $69.83 | | $69.79 | $69.93 |
| 29 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:55 | | 11:48:15 | Buy | limit | 100 | | | $69.85 | | $69.83 | $69.93 |
| 30 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 11:47:56 | 11:47:56 | | Buy | limit | 100 | 100 | 100 | $69.93 | $69.93 | $69.85 | $69.93 |
| 31 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:47:56 | 11:47:56 | | Buy | limit | 100 | 100 | 100 | $69.93 | $69.93 | $69.85 | $69.93 |
| 32 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 11:47:57 | 11:47:57 | | Buy | limit | 100 | 100 | 200 | $69.95 | $69.95 | $69.85 | $69.95 |
| 33 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 11:47:57 | | 11:48:04 | Buy | limit | 100 | | | $69.88 | | $69.85 | $69.95 |
| 34 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 11:47:58 | | 11:48:04 | Buy | limit | 100 | | | $69.91 | | $69.88 | $69.95 |
| 35 | BROKERAGE FIRM 1 | ****9639 | WINNER | 11:48:03 | 11:48:04 | | Sell | market | 1,000 | 1,000 | 6,200 | | | $69.93 | $69.91 | $69.98 |
| 36 | BROKERAGE FIRM 1 | ****9639 | WINNER | 11:48:07 | 11:48:07 | | Sell | market | 1,000 | 1,000 | 5,200 | | | $69.93 | $69.91 | $69.94 |
| 37 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 11:48:09 | 11:48:10 | | Buy | limit | 100 | 100 | 300 | $69.94 | $69.94 | $69.91 | $69.98 |
| 38 | BROKERAGE FIRM 1 | ****9639 | WINNER | 11:48:09 | 11:48:09 | | Sell | market | 2,000 | 2,000 | 3,200 | | | $69.94 | $69.91 | $69.98 |
| 39 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 11:48:10 | 11:48:10 | | Buy | limit | 100 | 100 | 400 | $69.98 | $69.98 | $69.94 | $69.98 |
| 40 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 11:48:12 | 11:48:14 | | Buy | limit | 100 | 100 | 500 | $69.94 | $69.94 | $69.94 | $69.98 |
| 41 | BROKERAGE FIRM 1 | ****9639 | WINNER | 11:48:12 | 11:48:12 | | Sell | market | 1,000 | 1,000 | 2,200 | | | $69.91 | $69.91 | $69.98 |
| 42 | BROKERAGE FIRM 1 | ****9639 | WINNER | 11:48:13 | 11:48:14 | | Sell | market | 2,000 | 2,000 | 200 | | | $69.93 | $69.94 | $69.98 |
| 43 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 11:48:16 | 11:48:16 | | Sell | limit | 100 | 100 | 0 | $69.91 | $69.91 | $69.91 | $69.98 |
| 44 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 11:48:17 | 11:48:18 | 11:48:18 | Sell | limit* | 500 | 100 | 400 | $69.84 | $69.85 | $69.87 | $69.98 |
| 45 | BROKERAGE FIRM 1 | ****9639 | WINNER | 11:48:19 | 11:48:20 | | Sell | market | 200 | 200 | 0 | | | $69.80 | $69.73 | $69.92 |
| 46 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 11:48:22 | 11:48:22 | 11:48:24 | Sell | limit* | 400 | 200 | 200 | $69.77 | $69.77 | $69.73 | $69.91 |
| 47 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 11:48:29 | 11:48:29 | | Sell | limit | 200 | 200 | 0 | $69.51 | $69.69 | $69.68 | $69.92 |

Notes: If an order was filled through multiple transactions, then the execution time is the time of the last transaction. Highlighted rows indicate winner account activity. The best ask and best bid are based on the order time. *Indicates that an order was partially executed.

| Source | Account | Role | Shares | Dollars Invested | Profit Realized |
|---|---|---|---|---|---|
| BROKERAGE FIRM 1 | ****9639 | WINNER | 7,200 | $500,185 | $3,285 |
| BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 600 | $41,887 | -$168 |
| BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 500 | $34,969 | -$93 |
| | | TOTAL | 8,300 | $577,041 | $3,024 |

## EXHIBIT 2

COORDINATED TRADING EVENT IN THE COMMON STOCK OF COMPANY B

JUNE 18, 2015 FROM 9:54:38 AM THROUGH 9:56:39 AM (Eastern Standard Time)

A. On June 18, 2015, Defendants orchestrated a Coordinated Trading Event in Company B's stock, which traded on the NASDAQ exchange, from roughly 9:54:38 AM through 9:56:39 AM.

B. For this particular Coordinated Trading Event, two of the Coordinated Accounts traded Company B stock.  Defendant Taub controlled trading in both the winner account (the aforementioned ****9639 account held in the names of Taub's wife and her father at Brokerage Firm 1) and the Associate 1 helper account (the aforementioned account number ****0035 account held in the name of EAC at Brokerage Firm 2 for which Associate 1 was an authorized trader).

C. Between approximately 9:54:38 AM and 9:54:54 AM, the Associate 1 helper account placed a series of six sell limit orders in Company B stock (totaling 800 shares), all but two of which were at a progressively lower price (ranging from $79.59 to $79.35), each of which were executed.  Between the time the first helper account sell order was placed and the winner account placed its first buy order, the national best ask for Company B stock (that is, the lowest price at which market participants were offering to sell Company B stock) declined from $79.69 per share to $79.41 per share.

D. Between 9:54:57 AM and 9:56:04 AM, the winner account placed seven purchase orders for a total of 7,300 Company B shares.  These orders were in increments between 1,000 and 1,150 each and were executed at prices between $79.35 and $79.70 per share.

E. At the same time that the winner account accumulated its 7,300 share position, the Associate 1 helper account placed a new series of four sell limit orders totaling 400 shares.  Two of these orders were executed and the Associate 1 helper account cancelled the other two orders once the winner account accumulation was complete.

F. The Associate 1 helper account sell orders both before and during the winner account's accumulation were designed to, and did, artificially lower the market price before and while the winner account accumulated its 7,300 share position.

G. After the winner account accumulated its 7,300 share position, the scheme reversed course to enable the winner account to liquidate at an artificially high price using a rapid series of helper account buy limit orders to attempt to walk up the market price.  Between 9:56:05 AM and 9:56:26 AM, the Associate 1 helper account entered a series of 18 buy limit orders, generally moving towards increasing the price.  Ten of these buy orders were executed (totaling 1,200 shares), at prices ranging from $73.73 to $80.09.  (The Associate 1 helper account cancelled the other eight orders immediately following the completion of the winner account's liquidation).  Between the time the first helper account buy order was placed and the winner account placed its first sell order, the

national best bid for Company B stock (that is, the highest price at which market participants were offering to buy Company B stock), moved from $79.52 to $80.03.

H.  After entering the series of buy orders in the helper account, the winner account liquidated its position from 9:56:26 AM to 9:56:37 AM through a series of four market orders of between 1,300 and 2,000 shares each, which were executed at prices between $80.08 and $80.46.  While the winner account liquidated its position, the Associate 1 helper account placed a new series of six buy limit orders of 100 shares each.  Half of these buy limit orders were executed (at prices between $80.20 and $80.42) while the Associate 1 helper account cancelled the other half of the orders following the winner account's liquidation.

I.  The Associate 1 helper account buy limit orders both before and during the winner account's liquidation of the position were designed to, and did, artificially raise the stock's market price before and while the winner account liquidated its 7,300 share position.

J.  To close out this particular Coordinated Trading Event, the Associate 1 helper account sold its remaining position in Company B stock.

K.  The net profit from this Coordinated Trading Event, which lasted roughly two minutes, was approximately $4,613 and the trading constituted approximately 57% of the trading volume in Company B's stock during that time period:

L.  On the same day, Defendants engaged in at least 12 separate Coordinated Trading Events in the stock of Company B (*i.e.*, the above event and 11 others), netting profits of roughly $32,391.  In addition on June 18, 2015, Defendants engaged in numerous other Coordinated Trading Events involving other companies' stock.  Thus, on June 18, 2015, Defendants engaged in a total of at least 46 Coordinated Trading Events, netting profits of roughly $83,697.

## Company B June 18, 2015
### 9:54 AM - 9:56 AM

| ID | Source | Account | Role | Order Time | Execution Time | Cancel Time | Buy/ Sell | Order Type | Order Quantity | Execution Quantity | Share Balance | Order Price | Execution Price | Best Bid | Best Ask |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:54:38 | 9:55:16 | | Sell | limit | 200 | 200 | (200) | $79.59 | $79.59 | $79.36 | $79.69 |
| 2 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:54:40 | 9:55:15 | | Sell | limit | 100 | 100 | (300) | $79.52 | $79.52 | $79.35 | $79.59 |
| 3 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:54:49 | 9:54:49 | | Sell | limit | 200 | 200 | (500) | $79.35 | $79.35 | $79.35 | $79.52 |
| 4 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:54:51 | 9:55:08 | | Sell | limit | 100 | 100 | (600) | $79.47 | $79.47 | $79.35 | $79.52 |
| 5 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:54:52 | 9:54:52 | | Sell | limit | 100 | 100 | (700) | $79.37 | $79.37 | $79.35 | $79.47 |
| 6 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:54:54 | 9:55:03 | | Sell | limit | 100 | 100 | (800) | $79.41 | $79.41 | $79.27 | $79.47 |
| 7 | BROKERAGE FIRM 1 | ****9639 | WINNER | 9:54:56 | 9:54:57 | | Buy | market | 1,150 | 1,150 | 1,150 | | $79.37 | $79.27 | $79.41 |
| 8 | BROKERAGE FIRM 1 | ****9639 | WINNER | 9:55:02 | 9:55:02 | | Buy | market | 1,000 | 1,000 | 2,150 | | $79.35 | $79.27 | $79.40 |
| 9 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:55:04 | 9:55:04 | | Sell | limit | 100 | 100 | (900) | $79.27 | $79.29 | $79.27 | $79.45 |
| 10 | BROKERAGE FIRM 1 | ****9639 | WINNER | 9:55:08 | 9:55:09 | | Buy | market | 1,000 | 1,000 | 3,150 | | $79.46 | $79.27 | $79.47 |
| 11 | BROKERAGE FIRM 1 | ****9639 | WINNER | 9:55:14 | 9:55:15 | | Buy | market | 1,000 | 1,000 | 4,150 | | $79.46 | $79.29 | $79.52 |
| 12 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:55:21 | 9:55:28 | | Sell | limit | 100 | 100 | (1,000) | $79.70 | $79.70 | $79.49 | $79.83 |
| 13 | BROKERAGE FIRM 1 | ****9639 | WINNER | 9:55:27 | 9:55:28 | | Buy | market | 1,150 | 1,150 | 5,300 | | $79.66 | $79.49 | $79.70 |
| 14 | BROKERAGE FIRM 1 | ****9639 | WINNER | 9:55:37 | 9:55:38 | | Buy | market | 1,000 | 1,000 | 6,300 | | $79.70 | $79.51 | $79.81 |
| 15 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:55:55 | | 9:56:04 | Sell | limit | 100 | | | $79.80 | | $79.59 | $79.97 |
| 16 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:01 | | 9:56:04 | Sell | limit | 100 | | | $79.73 | | $79.66 | $79.80 |
| 17 | BROKERAGE FIRM 1 | ****9639 | WINNER | 9:56:03 | 9:56:04 | | Buy | market | 1,000 | 1,000 | 7,300 | | $79.64 | $79.52 | $79.73 |
| 18 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:05 | 9:56:06 | | Buy | limit | 100 | 100 | (900) | $79.73 | $79.73 | $79.52 | $79.73 |
| 19 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:06 | 9:56:06 | | Buy | limit | 100 | 100 | (800) | $79.73 | $79.73 | $79.52 | $79.73 |
| 20 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:07 | 9:56:07 | | Buy | limit | 100 | 100 | (700) | $79.73 | $79.73 | $79.52 | $79.73 |
| 21 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:07 | 9:56:07 | | Buy | limit | 100 | 100 | (600) | $79.73 | $79.73 | $79.52 | $79.73 |
| 22 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:12 | | 9:56:38 | Buy | limit | 600 | | | $79.66 | | $79.55 | $79.97 |
| 23 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:15 | | 9:56:38 | Buy | limit | 200 | | | $79.77 | | $79.66 | $79.89 |
| 24 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:17 | 9:56:17 | | Buy | limit | 300 | 300 | (300) | $79.90 | $79.90 | $79.77 | $79.90 |
| 25 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:17 | | 9:56:38 | Buy | limit | 100 | | | $79.77 | | $79.77 | $79.90 |
| 26 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:18 | 9:56:18 | | Buy | limit | 100 | 100 | (200) | $79.98 | $79.97 | $79.77 | $79.98 |
| 27 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:18 | 9:56:18 | | Buy | limit | 100 | 100 | (100) | $80.00 | $80.00 | $79.77 | $79.98 |
| 28 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:19 | 9:56:19 | | Buy | limit | 100 | 100 | 0 | $80.00 | $80.00 | $79.77 | $79.98 |
| 29 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:21 | | 9:56:38 | Buy | limit | 100 | | | $79.84 | | $79.77 | $79.98 |
| 30 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:21 | | 9:56:38 | Buy | limit | 100 | | | $79.84 | | $79.77 | $79.98 |
| 31 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:22 | 9:56:22 | | Buy | limit | 100 | 100 | 100 | $79.98 | $79.98 | $79.84 | $79.98 |
| 32 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:23 | 9:56:23 | | Buy | limit | 100 | 100 | 200 | $80.09 | $80.09 | $79.85 | $80.09 |
| 33 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:24 | | 9:56:38 | Buy | limit | 100 | | | $79.88 | | $79.85 | $80.09 |
| 34 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:24 | | 9:56:38 | Buy | limit | 100 | | | $79.88 | | $79.85 | $80.09 |
| 35 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:26 | | 9:56:38 | Buy | limit | 100 | | | $80.05 | | $80.03 | $80.42 |
| 36 | BROKERAGE FIRM 1 | ****9639 | WINNER | 9:56:26 | 9:56:26 | | Sell | market | 2,000 | 2,000 | 5,300 | | $80.08 | $80.03 | $80.42 |
| 37 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:27 | 9:56:27 | | Buy | limit | 100 | 100 | 300 | $80.42 | $80.42 | $80.06 | $80.42 |
| 38 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:28 | | 9:56:38 | Buy | limit | 100 | | | $80.09 | | $80.06 | $80.42 |
| 39 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:29 | 9:56:29 | | Buy | limit | 100 | 100 | 400 | $80.41 | $80.36 | $80.09 | $80.42 |
| 40 | BROKERAGE FIRM 1 | ****9639 | WINNER | 9:56:29 | 9:56:29 | | Sell | market | 2,000 | 2,000 | 3,300 | | $80.18 | $80.09 | $80.42 |
| 41 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:31 | 9:56:31 | | Buy | limit | 100 | 100 | 500 | $80.20 | $80.20 | $80.10 | $80.42 |
| 42 | BROKERAGE FIRM 1 | ****9639 | WINNER | 9:56:31 | 9:56:32 | | Sell | market | 2,000 | 2,000 | 1,300 | | $80.15 | $80.10 | $80.42 |
| 43 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:33 | | 9:56:38 | Buy | limit | 100 | | | $80.27 | | $80.25 | $80.42 |
| 44 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:35 | | 9:56:38 | Buy | limit | 100 | | | $80.37 | | $80.28 | $80.62 |
| 45 | BROKERAGE FIRM 1 | ****9639 | WINNER | 9:56:36 | 9:56:37 | | Sell | market | 1,300 | 1,300 | 0 | | $80.46 | $80.37 | $80.62 |
| 46 | BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 9:56:39 | 9:56:39 | | Sell | limit | 500 | 500 | 0 | $80.37 | $80.37 | $80.37 | $80.64 |

Notes: If an order was filled through multiple transactions, then the execution time is the time of the last transaction. Highlighted rows indicate winner account activity. The best ask and best bid are as of the order time. *Indicates that an order was partially executed.

| Source | Account | Role | Shares | Dollars Invested | Profit Realized |
|---|---|---|---|---|---|
| BROKERAGE FIRM 1 | ****9639 | WINNER | 7,300 | $580,492 | $4,927 |
| BROKERAGE FIRM 2 | ****0035 | HELPER [ASSOCIATE 1] | 1,500 | $119,964 | -$314 |
| | | TOTAL | 8,800 | $700,456 | $4,613 |

**EXHIBIT 3**

COORDINATED TRADING EVENT IN THE COMMON STOCK OF COMPANY C

SEPTEMBER 25, 2015 FROM 9:50:48 AM TO 9:54:26 AM (Eastern Standard Time)

A. On September 25, 2015, Defendants orchestrated a Coordinated Trading Event in Company C's stock, which traded on the NYSE, from roughly 9:50:48 AM to 9:54:26 AM.

B. For this particular Coordinated Trading Event, two of the Coordinated Accounts traded Company C stock. The winner account was account number ****1113 at Brokerage Firm 3, which was held in the name of Defendant Shmalo. The helper account was the aforementioned account number ****3808 held in the name of Defendant Shmalo and his relative at Brokerage Firm 2.

C. From 9:50:48 AM to 9:51:19 AM, the Shmalo helper account placed a series of 21 sell limit orders in Company C stock for 100 shares each (totaling 2,100 shares), generally moving towards lowering the price (from $20.03 to $19.52). The Shmalo helper account cancelled five of the first six sell orders (totaling 500 shares), when they weren't filled by the time the winner account was trading; the rest of the orders were executed at prices between $19.46 and 19.81. Between the time the first helper account sell order was placed and the winner account placed its first buy order, the national best ask for Company C stock (that is, the lowest price at which market participants were offering to sell Company C stock) declined from $20.10 per share to $19.52 per share.

D. Between 9:51:22 AM and 9:52:18 AM, the winner account placed a series of 11 buy market orders for a total of 17,000 Company C shares. Eight of these orders were for 1,500 shares, two were for 1,000 shares and one order was for 3,000 shares. These buy orders were executed at prices ranging from $19.39 per share to $20.13 per share.

E. The Shmalo helper account sell orders were designed to, and did, artificially lower the stock's market price before the winner account accumulated its position.

F. After the winner accumulated its 17,000 share position, the scheme reversed course to enable the winner account to liquidate at an artificially high price using a rapid series of buy limit orders placed in the helper accounts to attempt to walk up the market price. From 9:52:24 to 9:53:32, the Shmalo helper account placed a new series of 32 smaller buy limit orders, ranging in size from 100 shares to 1,500 shares and increasing in price from $20.10 to $21.42. Eight of the buy limit orders were executed. The Shmalo helper account cancelled 22 of the orders and partially cancelled two others. Between the time the first helper account buy order was placed and the winner account placed its first sell order, the national best bid for Company C stock (that is, the highest price at which market participants were offering to buy Company C stock) increased from $19.76 per share to $21.36 per share.

G. As the helper account was accumulating its position, the winner account began to liquidate. Between 9:53:42 and 9:54:18, the winner account placed six market sell orders of 2,500

shares each and one market sell order of 2,000 shares, executed at prices ranging from $20.89 to $21.57 per share.

H.  During approximately the same time period that the winner account was liquidating its position, the helper account entered a new series of seven buy limit orders of 100 shares each, which were executed a prices between $20.86 and $21.29.

I.  The helper account buy limit orders both before and during the winner account's liquidation of the position were designed to, and did, artificially raise the market price before and while the winner account liquidated its 17,000 share position.

J.  To close out this particular Coordinated Trading Event, the helper account sold its remaining position in Company C stock.

K.  The net profit from this Coordinated Trading Event, which lasted fewer than four minutes, was approximately $21,162 and the trading constituted approximately 87% of the trading volume of Company C stock during that time period:

L.  The Coordinated Trading Event in Company C's stock was just one of many Coordinated Trading Events that the Defendants engaged in on that same day.  Defendants engaged in a total of at least 41 Coordinated Trading Events on September 25, 2015, netting profits of roughly $104,822.

**Company C September 25, 2015**
**9:50 AM - 9:54 AM**

| ID | Source | Account | Role | Order Time | Execution Time | Cancel Time | Buy/Sell | Order Type | Order Quantity | Execution Quantity | Share Balance | Order Price | Execution Price | Best Bid | Best Ask |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:50:48 | | 9:51:32 | Sell | limit | 100 | | | $20.03 | | $19.72 | $20.10 |
| 2 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:50:50 | | 9:51:32 | Sell | limit | 100 | | | $19.92 | | | $20.03 |
| 3 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:50:52 | | 9:51:32 | Sell | limit | 100 | | | $19.89 | | $19.81 | $19.92 |
| 4 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:50:54 | 9:50:54 | | Sell | limit | 100 | 100 | (100) | $19.81 | $19.81 | $19.81 | $19.89 |
| 5 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:50:55 | | 9:51:37 | Sell | limit | 100 | | | $19.77 | | $19.81 | $19.87 |
| 6 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:50:58 | | 9:51:37 | Sell | limit | 100 | | | $19.73 | | $19.53 | $19.77 |
| 7 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:00 | 9:51:35 | | Sell | limit | 100 | 100 | (200) | $19.67 | $19.67 | $19.45 | $19.73 |
| 8 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:00 | 9:51:01 | | Sell | limit | 100 | 100 | (300) | $19.46 | $19.46 | $19.46 | $19.67 |
| 9 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:02 | 9:51:02 | | Sell | limit | 100 | 100 | (400) | $19.46 | $19.46 | $19.46 | $19.67 |
| 10 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:03 | 9:51:35 | | Sell | limit | 100 | 100 | (500) | $19.64 | $19.64 | $19.46 | $19.67 |
| 11 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:05 | 9:51:30 | | Sell | limit | 100 | 100 | (600) | $19.60 | $19.60 | $19.47 | $19.64 |
| 12 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:06 | 9:51:06 | | Sell | limit | 100 | 100 | (700) | $19.47 | $19.47 | $19.47 | $19.60 |
| 13 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:07 | 9:51:07 | | Sell | limit | 100 | 100 | (800) | $19.46 | $19.46 | $19.46 | $19.60 |
| 14 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:08 | 9:51:30 | | Sell | limit | 100 | 100 | (900) | $19.55 | $19.55 | $19.46 | $19.60 |
| 15 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:09 | 9:51:09 | | Sell | limit | 100 | 100 | (1,000) | $19.46 | $19.46 | $19.46 | $19.55 |
| 16 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:11 | 9:51:11 | | Sell | limit | 100 | 100 | (1,100) | $19.51 | $19.51 | $19.46 | $19.55 |
| 17 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:12 | 9:51:13 | | Sell | limit | 100 | 100 | (1,200) | $19.52 | $19.52 | $19.46 | $19.55 |
| 18 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:13 | 9:51:13 | | Sell | limit | 100 | 100 | (1,300) | $19.46 | $19.46 | $19.46 | $19.55 |
| 19 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:15 | 9:51:17 | | Sell | limit | 100 | 100 | (1,400) | $19.49 | $19.49 | $19.25 | $19.55 |
| 20 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:17 | 9:51:17 | | Sell | limit | 100 | 100 | (1,500) | $19.46 | $19.46 | $19.25 | $19.49 |
| 21 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:51:19 | 9:51:30 | | Sell | limit | 100 | 100 | (1,600) | $19.52 | $19.52 | $19.25 | $19.55 |
| 22 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:51:21 | 9:51:22 | | Buy | market | 1,500 | 1,500 | 1,500 | | $19.50 | $19.26 | $19.52 |
| 23 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:51:24 | 9:51:29 | | Buy | market | 1,500 | 1,500 | 3,000 | | $19.39 | $19.27 | $19.52 |
| 24 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:51:27 | 9:51:29 | | Buy | market | 1,500 | 1,500 | 4,500 | | $19.50 | $19.29 | $19.52 |
| 25 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:51:30 | 9:51:36 | | Buy | market | 1,500 | 1,500 | 6,000 | | $19.54 | $19.29 | $19.52 |
| 26 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:51:34 | 9:51:36 | | Buy | market | 1,500 | 1,500 | 7,500 | | $19.68 | $19.31 | $19.64 |
| 27 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:51:40 | 9:51:41 | | Buy | market | 1,500 | 1,500 | 9,000 | | $19.57 | $19.33 | $19.80 |
| 28 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:51:47 | 9:51:51 | | Buy | market | 1,500 | 1,500 | 10,500 | | $19.79 | $19.38 | $20.09 |
| 29 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:51:53 | 9:51:55 | | Buy | market | 1,500 | 1,500 | 12,000 | | $20.06 | $19.45 | $20.10 |
| 30 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:52:06 | 9:52:08 | | Buy | market | 3,000 | 3,000 | 15,000 | | $20.10 | $19.53 | $20.10 |
| 31 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:52:14 | 9:52:16 | | Buy | market | 1,000 | 1,000 | 16,000 | | $20.10 | $19.53 | $20.10 |
| 32 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:52:18 | 9:52:20 | | Buy | market | 1,000 | 1,000 | 17,000 | | $20.13 | $19.60 | $20.10 |
| 33 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:24 | | 9:52:36 | Buy | limit | 1,500 | | | $20.10 | | $19.76 | $20.40 |
| 34 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:31 | 9:52:31 | 9:52:42 | Buy | limit* | 1,500 | 200 | (1,400) | $20.44 | $20.44 | $20.11 | $20.62 |
| 35 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:34 | | 9:52:43 | Buy | limit | 100 | | | $20.49 | | $20.46 | $20.82 |
| 36 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:36 | | 9:52:44 | Buy | limit | 100 | | | $20.52 | | $20.49 | $20.82 |
| 37 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:39 | | 9:53:03 | Buy | limit | 1,500 | | | $20.57 | | $20.52 | $20.82 |
| 38 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:40 | | 9:53:03 | Buy | limit | 100 | | | $20.60 | | $20.57 | $21.05 |
| 39 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:42 | | 9:53:03 | Buy | limit | 100 | | | $20.63 | | $20.60 | $21.03 |
| 40 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:44 | | 9:53:03 | Buy | limit | 100 | | | $20.66 | | $20.63 | $21.03 |
| 41 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:47 | | 9:53:04 | Buy | limit | 100 | | | $20.81 | | $20.66 | $21.05 |
| 42 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:51 | 9:52:51 | 9:53:04 | Buy | limit* | 100 | 45 | (1,355) | $20.84 | $20.84 | $20.81 | $21.05 |
| 43 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:53 | | 9:53:05 | Buy | limit | 100 | | | $20.84 | | $20.81 | $21.05 |
| 44 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:55 | | 9:53:05 | Buy | limit | 100 | | | $20.87 | | $20.84 | $21.05 |
| 45 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:56 | | 9:53:05 | Buy | limit | 100 | | | $20.90 | | $20.87 | $21.05 |
| 46 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:59 | 9:52:59 | | Buy | limit | 100 | 100 | (1,255) | $21.05 | $21.02 | $20.90 | $21.05 |
| 47 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:52:59 | 9:52:59 | | Buy | limit | 100 | 100 | (1,155) | $21.05 | $21.04 | $20.90 | $21.05 |
| 48 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:00 | 9:53:00 | | Buy | limit | 100 | 100 | (1,055) | $21.05 | $21.05 | $20.90 | $21.05 |
| 49 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:00 | | 9:53:18 | Buy | limit | 100 | | | $20.93 | | $20.90 | $21.05 |
| 50 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:01 | | 9:53:18 | Buy | limit | 100 | | | $20.96 | | $20.93 | $21.38 |

**Company C September 25, 2015**
**9:50 AM - 9:54 AM**

| ID | Source | Account | Role | Order Time | Execution Time | Cancel Time | Buy/Sell | Order Type | Order Quantity | Execution Quantity | Share Balance | Order Price | Execution Price | Best Bid | Best Ask |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:05 | | 9:53:18 | Buy | limit | 100 | | | $20.99 | | $20.99 | $21.44 |
| 52 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:06 | | 9:53:18 | Buy | limit | 100 | | | $21.02 | | $20.99 | $21.44 |
| 53 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:08 | | 9:53:19 | Buy | limit | 100 | | | $21.12 | | $21.02 | $21.46 |
| 54 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:10 | | 9:53:19 | Buy | limit | 1,000 | | | $21.09 | | $21.12 | $21.53 |
| 55 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:11 | | 9:53:33 | Buy | limit | 100 | | | $21.15 | | $21.12 | $21.61 |
| 56 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:13 | | 9:53:33 | Buy | limit | 100 | | | $21.24 | | $21.15 | $21.61 |
| 57 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:14 | | 9:53:33 | Buy | limit | 100 | | | $21.27 | | $21.24 | $21.63 |
| 58 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:16 | | 9:53:33 | Buy | limit | 100 | | | $21.29 | | $21.27 | $21.63 |
| 59 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:21 | | 9:53:34 | Buy | limit | 100 | | | $21.30 | | $21.29 | $21.63 |
| 60 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:22 | 9:53:43 | | Buy | limit | 100 | 100 | (955) | $21.33 | $21.33 | $21.30 | $21.63 |
| 61 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:25 | 9:53:28 | | Buy | limit | 100 | 100 | (855) | $21.36 | $21.36 | $21.33 | $21.64 |
| 62 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:28 | 9:53:28 | | Buy | limit | 100 | 100 | (755) | $21.42 | $21.42 | $21.36 | $21.64 |
| 63 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:30 | 9:53:47 | | Buy | limit | 1,000 | 1,000 | 245 | $21.32 | $21.32 | $21.33 | $21.64 |
| 64 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:32 | 9:53:41 | | Buy | limit | 100 | 100 | 345 | $21.36 | $21.36 | $21.33 | $21.64 |
| 65 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:53:40 | 9:53:42 | | Sell | market | 2,500 | 2,500 | 14,500 | | | $21.40 | $21.36 | $21.64 |
| 66 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:53:43 | 9:53:46 | | Sell | market | 2,500 | 2,500 | 12,000 | | | $21.57 | $21.33 | $21.74 |
| 67 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:53:46 | 9:53:47 | | Sell | market | 2,500 | 2,500 | 9,500 | | | $21.36 | $21.32 | $21.74 |
| 68 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:53:49 | 9:53:50 | | Sell | market | 2,500 | 2,500 | 7,000 | | | $21.20 | $21.14 | $21.71 |
| 69 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:53:52 | 9:53:53 | | Sell | market | 2,500 | 2,500 | 4,500 | | | $21.04 | $20.98 | $21.58 |
| 70 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:53 | 9:54:16 | | Buy | limit | 100 | 100 | 445 | $20.86 | $20.86 | $20.82 | $21.58 |
| 71 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:55 | 9:54:09 | | Buy | limit | 100 | 100 | 545 | $21.01 | $21.01 | $20.98 | $21.57 |
| 72 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:53:58 | 9:54:04 | | Buy | limit | 100 | 100 | 645 | $21.08 | $21.08 | $21.01 | $21.49 |
| 73 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:01 | 9:54:03 | | Buy | limit | 100 | 100 | 745 | $21.14 | $21.14 | $21.08 | $21.47 |
| 74 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:02 | 9:54:03 | | Buy | limit | 100 | 100 | 845 | $21.17 | $21.17 | $21.14 | $21.45 |
| 75 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:04 | 9:54:04 | | Buy | limit | 100 | 100 | 945 | $21.29 | $21.29 | $21.17 | $21.45 |
| 76 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:09 | 9:54:09 | | Buy | limit | 100 | 100 | 1,045 | $21.08 | $21.08 | $21.01 | $21.45 |
| 77 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:54:09 | 9:54:11 | | Sell | market | 2,500 | 2,500 | 2,000 | | | $20.96 | $21.08 | $21.45 |
| 78 | BROKERAGE FIRM 3 | ****1113 | WINNER | 9:54:16 | 9:54:18 | | Sell | market | 2,000 | 2,000 | 0 | | | $20.89 | $20.87 | $21.45 |
| 79 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:24 | 9:54:24 | | Sell | limit | 100 | 100 | 945 | $20.58 | $20.58 | $20.58 | $21.39 |
| 80 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:24 | | 9:54:24 | Sell | limit | 100 | | | $20.58 | | $20.58 | $21.39 |
| 81 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:25 | 9:54:25 | | Sell | limit | 100 | 100 | 845 | $20.41 | $20.71 | $20.41 | $21.39 |
| 82 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:25 | 9:54:25 | | Sell | limit | 100 | 100 | 745 | $20.41 | $20.68 | $20.41 | $21.39 |
| 83 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:25 | 9:54:25 | | Sell | limit | 100 | 100 | 645 | $20.41 | $20.68 | $20.41 | $21.39 |
| 84 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:25 | 9:54:25 | | Sell | limit | 100 | 100 | 545 | $20.41 | $20.41 | $20.41 | $21.39 |
| 85 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:25 | 9:54:25 | | Sell | limit | 100 | 100 | 445 | $20.41 | $20.68 | $20.41 | $21.39 |
| 86 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:25 | 9:54:25 | 9:54:25 | Sell | limit* | 100 | 10 | 435 | $20.41 | $20.41 | $20.41 | $21.39 |
| 87 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:26 | 9:54:26 | | Sell | limit | 100 | 100 | 335 | $20.13 | $20.13 | $20.13 | $21.28 |
| 88 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:26 | 9:54:26 | | Sell | limit | 100 | 100 | 235 | $20.13 | $20.26 | $20.13 | $21.28 |
| 89 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:26 | | 9:54:26 | Sell | limit | 100 | | | $20.13 | | $20.13 | $21.28 |
| 90 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:26 | 9:54:26 | | Sell | limit | 100 | 100 | 135 | $20.13 | $20.26 | $20.13 | $21.28 |
| 91 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:26 | 9:54:26 | | Sell | limit | 100 | 100 | 35 | $20.13 | $20.26 | $20.13 | $21.28 |
| 92 | BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 9:54:26 | 9:54:26 | | Sell | limit | 35 | 35 | 0 | $20.12 | $20.12 | $20.13 | $21.28 |

Notes: If an order was filled through multiple transactions, then the execution time is the time of the last transaction. Highlighted rows indicate winner account activity. The best ask and best bid are as of the order time. *Indicates that an order was partially executed.

| Source | Account | Role | Shares | Dollars Invested | Profit Realized |
|---|---|---|---|---|---|
| BROKERAGE FIRM 3 | ****1113 | WINNER | 17,000 | $336,081 | $24,501 |
| BROKERAGE FIRM 2 | ****3808 | HELPER [SHMALO] | 2,645 | $55,966 | -$3,339 |
| | | TOTAL | 19,645 | $392,047 | $21,162 |

## DESIGNATION PURSUANT TO LOCAL CIVIL RULE 101.1(f)

Per the requirements of Local Civil Rule 101.1(f), the undersigned hereby designates the United States Attorney for the District of New Jersey to receive service of all notices or papers in this action at the following address:

> Catherine R. Murphy
> Assistant U.S. Attorney
> United States Attorney's Office
> District of New Jersey
> 970 Broad Street, Ste. 700
> Newark, NJ 07102
> (973) 297-2098 (Tel.)

SECURITIES AND EXCHANGE COMMISSION

By: _____

> Andrew Calamari
> Regional Director
> New York Regional Office
> Brookfield Place, 200 Vesey Street
> New York, NY 10281-1022
> (212) 336-0106 (Kaufman)
> KaufmanJa@sec.gov

Of Counsel:
Lara S. Mehraban, Associate Regional Director
Wendy B. Tepperman
Jack Kaufman
Michael Ellis
Janna Berke

## LOCAL CIVL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I certify that the matter in controversy alleged in the

foregoing Complaint is related to U.S. v. Taub, et al., Criminal Action No. 16-8190, and U.S. v.

1. Any and All Ownership Interest Held in the Name, On Behalf or for the Benefit of Joseph

Taub in the Assets of any and all Corporations, Partnerships or other Entities, and/or their

Subsidiaries, Affiliates and Joint Ventures, including but not limited to: a. Ultimate Ventures

LLC, et al., both pending in the U.S. District Court for the District of New Jersey.


                                   SECURITIES AND EXCHANGE COMMISSION


                         By: _____
                                   Andrew Calamari
                                   Regional Director
                                   New York Regional Office
                                   Brookfield Place, 200 Vesey Street
                                   New York, NY 10281-1022
                                   (212) 336-0106 (Kaufman)
                                   KaufmanJa@sec.gov


Of Counsel:
Lara S. Mehraban, Associate Regional Director
Wendy B. Tepperman
Jack Kaufman
Michael Ellis
Janna Berke